IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT TRESSLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-508 |
| | ) Judge Joy Flowers Conti |
| PYRAMID HEALTHCARE, Inc. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion to Dismiss or in the Alternative for Summary Judgment be granted.

**II. REPORT**

Plaintiff Robert Tressler ("Plaintiff") has been blind since age eighteen and alleges that this disability has caused severe depression and heroin and crack cocaine addictions. See Complaint at ¶¶ 12-16. He further alleges that he was initially denied admission to Defendant's addiction treatment facility in violation of Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12182; § 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*; and the Pennsylvania Human Relations Act (the "PHRA").  Finally, Plaintiff contends entitlement to damages for intentional infliction of emotional distress.

The following is recommended as to each of Plaintiff's four (4) counts in turn:

(1) Because Title III of the ADA provides a sole remedy of injunctive relief, a form of relief neither requested nor available, and because counsel has no entitlement to an award of fees, Plaintiff's claims under Count I should be dismissed;

(2) Because Plaintiff has failed to demonstrate a genuine issue of material fact concerning whether he was initially denied treatment solely because of his blindness, Defendant should be granted summary judgment as to Plaintiff's claims of violation of the Rehabilitation Act (Count II);

(3) Because Plaintiff has failed to exhaust his administrative remedies, his claims of violation of the PHRA should be dismissed (Count III); and

(4) Because Plaintiff has failed to produce sufficient evidence to avoid summary judgment on his claim for intentional infliction of emotional distress, Defendant should be granted summary judgment as to Count IV.

**A. <u>Statement of Facts</u>**

As more fully set forth in the pleadings in this case, Plaintiff became totally blind in 2000, at the age of eighteen (18), leading to severe depression and thence to heroin and cocaine addictions.  In mid-December, 2004, he was hospitalized and his drug counselor, Richard Burkovich ("Burkovich"), contacted Defendant to request Plaintiff's transfer to Defendant's addiction treatment facility in Wilkinsburg, Pennsylvania.  Burkovich, an employee of Addiction Specialists Inc. ("ASI"),  spoke with Alyssa Stoehr, Defendant's needs-assessment coordinator ("Defendant's Coordinator").  Defendant's Coordinator's testimony is that she took the general information regarding Plaintiff and requested Burkovich to forward the applicable admissions

documentation for review. See Stoehr Affidavit at ¶¶ 1-4. Burkovich's testimony is, similarly, that when he first spoke with Defendant's Coordinator, he specified Plaintiff's condition and disability, including his blindness, and was asked to fax the paperwork. See Burkovich Affidavit at ¶¶ 5-6.

Thereafter, Burkovich prepared and forwarded to Defendant a Pennsylvania Client Placement Summary Sheet (the "Summary Sheet"), identifying Plaintiff's care level requirements, in accordance with the Commonwealth's placement criteria. The Summary Sheet identified Plaintiff as requiring a maximum, or "4B" ,level of care in each of the six (6) criteria sections. Burkovich's testimony is that he independently prepared the Summary Sheet, without input from Defendant, and "determined that because [Plaintiff] was blind [he should be listed] as a 4B level of care patient." See Burkovich Affidavit at ¶ 11. Defendant's Wilkinsburg facility is authorized only to provide a maximum "3B" level of care. See Affidavit of James Vernarsky, Defendant's Chief Operating Officer ("Vernarsky Affidavit") at ¶¶ 5-10.[1]

---

1. See also id. at ¶9 (noting that 4B care is provided in a "licensed acute care facility", *i.e.*, a "hospital-based addictions rehabilitation unit" offering "intensive biomedical and/or psychiatric services").

Indeed, review of the related Commonwealth criteria indicates that a 4B designation is generally reserved for individuals with additional, severe biomedical, psychiatric and/or behavioral conditions, rendering them, *e.g.*, violent, resistant to treatment, or at risk of severe withdrawal symptoms. The evidence before this Court (including the apparent discrepancies between the information written on the Summary Sheet and the 4B designations therein) suggests, therefore, that such designation was inappropriately assigned to Plaintiff by Burkovich in December, 2004, thus most unfortunately and unnecessarily delaying his addiction treatment. See December 17, 2004 PCPC Summary Sheet; id. (designating Plaintiff as 4B as to "intoxication/withdrawal" but writing, in a separate section, that "[p]atient has responded well to treatment, is not at risk of severe withdrawal"). Cf. Defendant's Supplemental Memo (noting that whether Burkovich designated Plaintiff as 4B because of his disability is irrelevant to Defendant's liability where Burkovich was not employed by Defendant and his testimony is that
(continued...)

3

Defendant's testimony is that after receiving Burkovich's assessment information, it reviewed the documents and denied transfer because it was unable to accept a 4B level patient. See Stoehr Affidavit at ¶ 9.   Burkovich's testimony is that, again, after receipt of Burkovich's documentation, Defendant's Coordinator told him that "the doctor refused to admit [Plaintiff] because he was blind and they did not have the staff available to walk him around" or ensure his safety in the building.  Burkovich Affidavit at ¶ 8.  On this basis, Plaintiff's testimony is that Defendant's physician "explicitly stated that Plaintiff could not be admitted because he was blind."  Plaintiff's Response at ¶ 20, Plaintiff's Affidavit.

Six months later, in June, 2005, Burkovich again contacted Defendant regarding Plaintiff's admission for treatment.  See Burkovich Affidavit at ¶ 12 ("On or about June 2, 2005, [Plaintiff] contacted me and stated he was in desperate need of help.  After numerous attempts to find help elsewhere, . . . I again contacted [Defendant] . . . .").  At that time, Defendant undertook its own assessment of Plaintiff's needs and concluded he required only a 3B level of care.  He was thereupon admitted and completed treatment.  See Stoehr Affidavit at ¶¶ 9-14.

### B. Applicable Standards of Review

1. Motion to Dismiss

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations of the Complaint and draws all reasonable inferences in favor of the non-moving party.  Such motion is granted, however, if it is clear that relief cannot be granted to the

---

1. (...continued)
he prepared his assessment independently).

plaintiff under any set of facts that could be proven consistent with the Complaint's allegations. See, *e.g.*, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45 (1957).

    2.  Motion for Summary Judgment

This Court's analysis of a motion for summary judgment is governed by Federal Rule of Civil Procedure 56(c) which states in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The inquiry to be made is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).[2] Although the Court must view all evidence in favor of, and resolve all doubts in favor of, the non-moving party, that party "must be able to produce evidence that 'when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor.'" SEC v. Hughes Capital Corp., 124 F.3d 449, 452 (3d Cir. 1997) (quoting Kline v. First W. Gov't Sec., 24 F.3d 480, 484 (3d Cir. 1994)).

In response to a summary judgment motion, a plaintiff may no longer rest on mere allegations but must set forth, by affidavit or other evidence, specific facts sufficient to sustain his claim. See Fed. R. Civ. Proc. 56(e). See also Celotex Corp. v. Catrett, 477 U.S. 317, 324

---

2. See also id. (holding that there is no genuine issue of material fact if the evidence is of insufficient caliber or quantity to allow a rational jury to find for the nonmoving party).

(1986) (observing that Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).

### C. Analysis

1. Title III of the ADA

As duly noted in Defendant's Supplemental Memorandum in Support of its Motion to Dismiss or for Summary Judgment ("Defendant's Supplemental Memo"), Plaintiff has conceded, as to his claim under Title III of the ADA, that the sole remedy available - injunctive relief - is unnecessary. See Plaintiff's Response at ¶ 15. See also 42 U.S.C. § 12188. Plaintiff was reassessed by Defendant in June, 2005, admitted, and completed his addiction treatment.

In his prayer for relief, Plaintiff initially requested fees available to a prevailing part under Title III of the ADA. See Plaintiff's Response to the Motion to Dismiss ("Plaintiff's Response") at ¶ 4. However, Plaintiff continued assertion of entitlement to fees is unclear. Compare Plaintiff's Response at ¶ 15, p. 4 (apparently conceding that as "injunctive relief and attorneys fees for the prevailing party are the only remedies . . . Plaintiff's claim under the ADA is moot" with Plaintiff's Memorandum in Opposition at 6 ("Plaintiff avers, however, that this lawsuit was the catalyst for change in these circumstances, although fully aware of the impact of Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Services, 532 U.S. 598 (2001), and its affect [sic] on Plaintiff's ability to recover fees as a catalyst.") To the extent Plaintiff asserts entitlement to fees under the circumstances of this case, he is in error. See Buckhannon, *supra* (holding that attorney's fees are not awardable under a catalyst theory where legal action brings about a voluntary change in the defendant's conduct, and requiring that the

6

party seeking an award of fees must secure a judgment on the merits or a court-ordered consent decree).

Accordingly, Plaintiff's claim under the ADA should be dismissed.

2. § 504 of the Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, *solely by reason of* [that] disability, . . . be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance ." 29 U.S.C. § 794(a) (emphasis added). Thus, to make out a claim under this language, Plaintiff must show that he was disabled, otherwise qualified, and the victim of discrimination solely because of his disability. See Wagner by Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995). It is not disputed that Plaintiff is disabled and the treatment program is receiving Federal funding. See Defendant's Supplemental Memo at 5. Thus, the analysis focuses upon whether Plaintiff was "otherwise qualified" and was denied treatment "solely by reason of" his disability. The burden of making these showings rests with Plaintiff. See, *e.g.*, Chandler v. City of Dallas, 2F.3d 1385, 1390 (5th Cir. 1993); Maddox v. University of Tennessee, 62 F.3d 843, 846 (6th Cir. 1995).

Defendant contends that Plaintiff was not "otherwise qualified" because Burkovich completed an independent assessment and identified Plaintiff as requiring a level of treatment, *i.e.*, 4B, that Defendant was not legally authorized to provide. This contention cannot stand. Defendant subsequently performed its own assessment and concluded that Plaintiff required only a 3B level of treatment and was qualified for admission to Defendant's facility, whereupon Plaintiff was admitted. Defendant points to no evidence of record suggesting a material

7

improvement in Plaintiff's condition in the intervening six months.  To the contrary, the evidence suggests that Burkovich's assessment was erroneous, placing unwarranted restriction on Plaintiff's qualification for treatment at available facilities such as Defendant's.  See *supra* n. 1. Cf. Burkovich Affidavit at ¶ 14 (attesting that Plaintiff's "treatment needs" were unchanged).  An individual *actually qualified* for participation in a federally-funded program, whatever the unfortunate failings of his counselor or his paperwork, is an "otherwise qualified" individual within the meaning, purposes and scope of the Rehabilitation Act.

Defendant further contends, however, that Plaintiff has not proffered evidence sufficient to maintain a claim that he was denied treatment solely because of his disability.  With this, the Court must agree.

In this case, Plaintiff's counselor identified him, in his application for hospital transfer, as requiring a level of care that Defendant was unauthorized to provide.  The Affidavit provided by Burkovich clearly attests that he independently assessed Plaintiff as requiring 4B care because of his disability.  The Affidavit testimony of Defendant's Coordinator is similarly clear that it was in reliance upon Burkovich's assessment of 4B care, and under this objective standard, that Plaintiff was initially denied admission.

Thus, Defendant has disclaimed reliance on Plaintiff's disability in making its admission decision, and has identified a legitimate, non-discriminatory reason for its decision.  Plaintiff has introduced no evidence that Defendant was legally authorized to accept a 4B patient.  Nor has Plaintiff introduced any evidence that Defendant accepted any other applicant identified as 4B in such applicant's independently-prepared admission materials, *i.e.*, that Plaintiff was denied

admission solely because of his blindness as opposed to his required level of care.[3]  See Hornstine v. Township of Moorestown, 263 F.Supp.2d 887, 904 (D.N.J. 2003) (noting that disparate treatment analysis is appropriate under § 504); Connus v. Bethesda House Corp., 1997 WL 379169 (E.D. Pa. 1977) (same); Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004) (discussing use of three-step *McDonnell Douglas* approach in § 504 disparate treatment cases where there is no direct evidence of discrimination).  Cf. Pushkin v. University of Colorado, 658 F.2d 1372, 1387 (10th Cir. 1981) (concluding that "appropriate standards" for evaluation of § 504 action are (1) plaintiff's establishment of a *prima facie* case showing he was otherwise qualified and rejected "under circumstances which gave rise to the inference that his rejection was based solely on his handicap"; (2) defendant's establishment that plaintiff's rejection from the program was for other reasons; and (3) plaintiff's rebuttal evidence showing that defendant's reasons were based on misconceptions or unfounded factual conclusions, and that reasons articulated encompassed unjustified consideration of the handicap itself).[4]

    Plaintiff's only evidence in support of his claim that the legitimate reasons articulated by Defendant were a pretext for discrimination is Affidavit testimony that Defendant's Coordinator attributed denial of admission to Plaintiff's disability.  But as discussed, *supra*, the parties do not dispute that Burkovich did, in fact, identify Plaintiff as requiring a 4B level of care; there is no evidence that Plaintiff was authorized to, or did, accept any 4B patient for treatment; Defendant

---

3.  Cf. Defendant's Supplemental Memo at 6 ("The facility provides up to and including a 3B level of care as that level is defined by the [Commonwealth].  Individuals who need a higher level of care, whether disabled or not, are not eligible to receive treatment at the facility.").

4.    In addition, a treatment facility not authorized to accept patients requiring more than its maximum level of care cannot, by way of "reasonable accommodation", admit such patients.

attests that this was the basis for its decision; and this reason was objectively sufficient to motivate Defendant's denial of admission.

The language of the Rehabilitation Act clearly requires that Plaintiff establish that he was denied treatment *solely* because of his disability. See Clark v. Cohen, 613 F.Supp. 684, 693 (D.C. Pa. 1985) (concluding that circumstances of case could not support finding that plaintiff was "discriminated against solely on the basis of her handicap as required by the Act); id. (noting that the "statute makes clear . . . that this discrimination must be based 'solely' on existence of handicap"); Amir v. St. Louis Univ., 184 F.3d 1017, 1029 n. 5 (8th Cir. 1999) (discussing "heightened requirement" of § 504 and explaining that "Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the [former] imposes a requirement that a person's disablity serve as the *sole* impetus for a defendant's adverse action") (emphasis added); Soledad v. United States Dp't of Treasury, 304 F.3d 500, 504-05 (5th Cir. 2002) (explaining that the Rehabilitation Act requires a higher level of causation than the mere "motivating causation" sufficient under the ADA).[5]

The attestations that Defendant's physician denied treatment owing to Plaintiff's blindness (the reason Plaintiff's counselor articulated for designating Plaintiff as 4B on the admission materials) are insufficient to withstand summary judgment under these circumstances. Cf. Salley v. Circuit City Stores, Inc., 160 F.3d 977 (3d Cir. 1998) (affirming summary judgment and holding that defendant's proffered reason for action was not pretext for discrimination where

---

5. See also Bennet-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005) (same); Pushkin v. University of Colorado, 658 F.2d 1372, 1384, (10th Cir. 1981) (observing that "[t]he standards for determining the merits of a case under § 504 are contained in the statute"); id. (noting that an individual "may not be denied . . . 'solely' on the basis of handicap").

defendant had objectively legitimate basis for action and plaintiff offered no evidence from which reasonable jury could find pretext); Maddox v. University of Tennessee, 62 F.3d 843 (6th Cir. 1995) (affirming summary judgment, with reference to "sole basis" requirement, where defendant had other objectively sufficient grounds for action). Compare Plaintiff's Memorandum in Opposition at 3 (averring that "plaintiff was denied solely based on his disability").[6]

While the apparently erroneous - and perhaps insufficiently attentive, careful or diligent - manner in which Plaintiff was assisted by his counselor may be another illustration of the shortcomings of our current health care system (particularly as it relates to the less fortunate among us), in light of the requirements of the Act and the evidentiary record before this Court, Defendant is entitled to summary judgment on this Count.

    3. <u>Failure to Exhaust Administrative Remedies under the PHRA</u>

On April 1, 2005, Plaintiff filed a claim against Defendant with the Pennsylvania Human Relations Commission (the "PHRC"). A few weeks later, on April 19, 2005, Plaintiff filed this action in Federal Court. The PHRC then suspended its investigation of the Complaint owing to Plaintiff's federal litigation. See PHRC's letter of April 28, 2005.

The PHRA establishes administrative remedies and procedures that claimants must exhaust prior to bringing a civil action in court. More specifically, the PHRC has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter. See 43 P.S. § 962. If the PHRC does not resolve the administrative charge

---

6. See generally Note, Rehabilitation Act Redux, 23 Yale Law & Policy Review 271, 292 -95 (Winter 2005) (detailing comprehensive review of current case law and concluding, as to causation, that courts to address issue have largely concluded that although ADA requires only mixed-motive or motivating factor causation, § 504 of the Rehabilitation Act requires a showing of but-for causation).

during that time, it must notify the claimant that he may bring a court action (although a claimant is then free to bring the action whether or not he receives such a letter). See Burgh v. Borough Council of Montrose, 251 F.3d 465 (3d Cir. 2001) (citations omitted). See also Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 921 (Pa. 1989) (holding that intended forum for initially addressing PHRA claims is the PHRC); id. at 919 (holding that PHRC would "bring to bear particular expertise in handling discrimination cases"); Bailey v. Storlazzi, 729 A.2d 1206 (Pa. Super. 1999) (holding that plaintiff must exhaust administrative remedies prior to bringing suit in court).

Because Plaintiff failed to exhaust his administrative remedies under the PHRA, Count III must be dismissed. See Price v. Philadephia Elec. Co., 790 F.Supp. 97, 100 (E.D. Pa. 1992) (holding that "[i]n the absence of exhaustion, a cause of action under the PHRA is fatally flawed from the moment it is filed").

    4.  <u>Intentionl Infliction of Emotional Distress</u>

A claim for intentional infliction of emotional distress requires a showing that the defendant's conduct (1) was intentional or reckless, (2) was extreme and outrageous, (3) caused severe emotional distress, and (4) caused some resulting physical harm. See, *e.g.*, Hoy v. Angelone, 720 A.2d 745, 753-54 (1998); Fewell v. Besner, 664 A.2d 577, 582 (1995).

As more fully addressed in Section C(2), *supra*, Plaintiff has failed to proffer evidence sufficient from which a reasonable jury could find that Defendant initially denied Plaintiff admission to its treatment facility solely because of his disability. To the contrary, the evidence presents a legitimate reason for denial of admission - Plaintiff's designation by his drug counselor as requiring 4B level care, a designation before Defendant at the time of its determination.

Plaintiff has proffered no evidence disputing Defendant's legal inability to admit 4B patients; nor has he proffered any evidence of discrimination with regard to Defendant's adherence to this care-level limitation.  Such classification was objectively sufficient basis for Defendant's initial denial of admission, and a reasonable jury could not conclude on this record that Plaintiff's blindness was the sole reason for Defendant's December, 2004 action.

Accordingly, for the reasons discussed in Section C(2), and largely *a fortiori*, Plaintiff cannot withstand summary judgment as to his claim that Defendant's conduct was an "extreme, outrageous, intentional [or] reckless" infliction of emotional distress.  Complaint at ¶ 40.  Cf. Thompson v. AT&T Corp., 371 F.Supp.2d 661, 685 (W.D. Pa. 2005) (explaining that conduct sufficient to allow recovery for intentional infliction of emotional distress must be "beyond all bounds of decency in our society to an extent to be termed outrageous and atrocious beyond all bounds of decency" and that "[s]uch a designation must be reserved only for the most egregious conduct").

### III. **CONCLUSION**

This Court is not unsympathetic to Plaintiff's troubles, nor to the delay in his treatment for drug addiction occasion by Defendant's initial denial of admission to its facility.  Nonetheless, it is recommended that Defendants' Motion for Dismissal or in the Alternative for Summary Judgment be granted.  For the reasons set forth above, this Court should dismiss Counts I (violation of the ADA) and III (violation of the PHRC), and grant summary judgment as to Counts II (violation of the Rehabilitation Act) and IV (intentional infliction of emotional distress).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

    /s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: February 21, 2006

cc: The Honorable Joy Flowers Conti
United States District Judge

All Counsel of Record